**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>GRANT ANDREW STOUT,<br><br>                Defendant. | Case No. 10-CR-50-JHP |

## REPORT AND RECOMMENDATION

Defendant's Motion to Quash Statements and Evidence Due to Illegal Arrest[1] [Dkt. 28] is before the undersigned United States Magistrate Judge for Report and Recommendation. The matter has been fully briefed and an evidentiary hearing on the matter was held on June 9, 2010. The undersigned United States Magistrate Judge RECOMMENDS that the Motion to Quash be DENIED.

## FACTS

On March 21, 2010, a search of the residence of Defendant Grant Andrew Stout (Stout) was conducted pursuant to a search warrant issued by an Oklahoma state court judge. The affidavit for the search warrant was signed by Investigator John Singer. The affidavit for the search warrant contained the following information, which is paraphrased from the affidavit:

> 1) Two Claremore police officers advised the affiant that they knew Stout in middle school and high school and told the affiant that Stout fired shots into the home of one of Stout's teachers and was detained and prosecuted through the juvenile legal system in Rogers County;
>
> 2) The affiant examined court records and online Oklahoma Department of Corrections records and confirmed that Grant <u>Scott</u> was convicted of the

---

[1] Although the title of the motion suggests that only the arrest is challenged, the motion also challenges the search warrant.

felony crimes of possession of a controlled substance and eluding a police officer on August 16, 2006, and received a suspended sentence of more than one year;

3) An informant, Brandon Hash, a neighbor and relative of Stout, told the affiant:

– Hash lived next to door to Stout for about a year; in September or October 2009, Stout came to Hash's house to show Hash Stout's new handgun;

– In December 2009, Hash and Stout went to a rural location in Rogers County to "go shooting," where they fired several firearms. Stout brought with him a pipe bomb he claimed to have manufactured in his home. Hash described the pipe bomb as being a steel pipe with caps at both ends surrounded by nails. Stout stated he had manufactured several of the pipe bombs using pipe, fuse and gunpowder obtained from pawn shops. Stout used the pipe bomb to blow up a cooler during the trip to rural Rogers County;

– In late 2009, Stout became angry with another man and told Hash that he intended to hide a pipe bomb on the man's vehicle. That man moved out of state after learning of the threat;

– Hash had been inside the residence to be searched several times. Three or four weeks earlier than Hash's conversation with the affiant, Hash was in the residence to be searched and observed a black handgun in the living room. Stout displayed the gun to Hash and stated he possessed it for his protection. Hash stated Stout kept the gun concealed in the cushions of the couch in the living room and on numerous occasions Stout talked about having other firearms in his home, including a 22 pistol and long guns;

– Stout was angry at Tim Wantland, a Rogers County attorney, over several cases that Stout and Wantland were both involved in. As a defense attorney Wantland represented Stout in a criminal prosecution. As an assistant district attorney, Wantland is involved in the prosecution of Stout's DUI. Stout knows that Hash and Wantland know each other;

– On the evening of March 20, 2010, Stout called Hash and threatened Hash and Wantland. Stout said that if Wantland did not "get him off" on his pending DUI case, he would get Wantland. Stout told Hash he would get him too.

4) The affiant obtained Hash's consent to record a telephone call between Hash and Stout on March 21, 2010 and heard Stout get angry, speak irrationally, and hang up on Hash. In a subsequent call, Stout told Hash that they would meet face to face and then hung up.

2

> 5) The affiant spoke to Tim Wantland on March 21, 2010. Wantland said he had been involved professionally with Stout in the past. Wantland said Stout approached Wantland at Hash's wedding several months ago and was angry over something and so Wantland left the wedding.

[Dkt. 28-2].

The search warrant was executed on the evening of March 21, 2010, by Investigator Singer, other members of the Claremore Police Department, an ATF agent, and members of the Northeast Oklahoma Violent Crimes Task Force. When Stout came out of his residence, he was detained at gunpoint, handcuffed, and placed in Deputy US Marshal Kennebrew's vehicle. Claremore Officer Steve Cox read Stout the Miranda warnings. Stout made some spontaneous statements about his cousin and Mr. Wantland. Firearms, ammunition, steel pipe, gun powder, and fuse material were found in the search.

Stout was charged with the crime of being a felon in possession of firearms and ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). [Dkt. 1, 18].

Stout seeks to suppress all evidence and statements obtained from him, claiming the arrest and search were in violation of the Fourth Amendment to the Constitution.

## Discussion

### Validity of the Search Warrant

Stout argues that the search warrant was invalid because it was issued based on an affidavit that contained information from an informant about whom there was no information concerning reliability; contained erroneous information about the criminal background of a Grant Scott, not Grant Stout; and the information concerning possession of firearms was stale and nonspecific.

The undersigned rejects the argument that the affidavit did not provide sufficient indicia of the reliability of the informant. The informant, Mr. Hash, was named in the affidavit and voluntarily came to meet with the police. When an informant is named, a lesser degree of corroboration is required than if the informant is a confidential informant. *United States v. Brown*, 496 F.3d 1070, 1075 (10th Cir. 2007). The affidavit recites that the informant is related to Defendant and had been in his home recently. The allegation that Defendant was involved with guns was corroborated by police officer's recollection that as a juvenile, Defendant had fired shots into a teacher's home. The affiant contacted the assistant district attorney, Mr. Wantland, who corroborated Mr. Hash's statements that Stout bore animus toward Mr. Wantland. In addition, Investigator Singer corroborated the allegation that there were hard feelings between Mr. Hash and Defendant by listening to a heated phone call between Mr. Hash and Defendant. Under the totality of the circumstances, the undersigned finds that there was sufficient corroboration of the reliability of the named informant.

In the paragraph of the affidavit which discussed prior criminal convictions, the affidavit inaccurately recites that Grant Scott was convicted of felony crimes of possession of controlled substances and eluding a police officer. Investigator Singer, the author of the affidavit, testified that the name Scott is a typographical error and the name should read Stout. Further, it was Stout's criminal record that he actually checked. The affidavit is also inaccurate in asserting that Scott/Stout had a prior felony conviction for possession of controlled substances. Investigator Singer testified that in fact Stout has a misdemeanor conviction for possession of controlled substances and the inaccuracy in the affidavit was the result of the fact that the Oklahoma Department of Corrections reported the conviction

4

when they usually do not report misdemeanors. Investigator Singer testified that the inaccuracies were not intentional but rather simply mistakes.

The undersigned finds Investigator Singer's testimony to be credible and finds that the inaccuracies were not intentional or made in reckless disregard of the truth. While officers should strive to avoid such mistakes in these important documents, they do not invalidate the warrant.

Setting aside the mistaken information concerning possession of controlled substances conviction, Stout in fact has a prior felony conviction for eluding a police officer. From a full reading of the affidavit, it is also clear that the reference to Scott was a typographical error. The entire affidavit deals with Stout and his activities. There is no other reference to a Grant Scott having any connection to this case. Disregarding the inaccurate information, the issuing Judge had probable cause to issue the warrant.[2]

The undersigned finds that the information contained in the affidavit concerning the possible possession of firearms at the residence to be searched was not stale. Although some of the information contained in the affidavit was months old, some of the information was three or four weeks old, which is not stale in the case of a federal firearms violation. Generally, "probable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." *United States v. Mathis*, 357 F.3d 1200, 1206-07 (10th Cir.2004) (brackets, internal quotation marks, and

---

[2] Although this issue was not addressed by the parties, the undersigned finds that even if the information about the criminal record of either Mr. Stout or Mr. Scott is set aside, the four corners of the affidavit contain probable cause for the issuance of a warrant, albeit not on the basis that Defendant was a felon in possession of firearms. Under 21 Okla. Stat. § 1767.11 (4) the willful manufacture of an explosive device or bomb with the knowledge or intent that it will be used to kill, injure or intimidate any person is a felony. The affidavit thus establishes probable cause for the issuance of the warrant on this basis.

citation omitted). "[W]hether information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *Id*. Federal firearms violations are considered to be continuing offenses, therefore the mere passage of time is not of critical importance. *United States v. Maxim*, 55 F.3d 394, 397 (8th Cir. 1995) (information three years old not stale); *United States v. Lester*, 285 Fed.Appx. 542, 546 (10th Cir. 2008)(year old e-mail was not stale information).

The affidavit indicates that Stout's possession of guns ranged over a period of months and was continuing: in September or October Stout displayed a new handgun to Hash; in December Stout and Hash went shooting and Stout set off a pipe bomb; in February or March Hash observed a gun in Stout's house which Stout stated he possessed for his protection. Further, in view of the threats outlined in the affidavit, Stout's statement that he kept a gun for protection, and the totality of the circumstances, the affidavit gave the issuing judge probable cause to believe Defendant would still possess the firearms in spite of the passage of time. *United States v. Rahn*, 511 F.3d 290, 293 (10th Cir. 1975).

The undersigned finds that the affidavit established a substantial basis for the issuing judge to conclude that there was a fair probability that contraband or evidence of a crime would be found at Stout's residence. Therefore the undersigned concludes that probable cause existed for issuance of the search warrant.

### Good Faith Exception

Even if the affidavit did not provide sufficient accurate information to establish probable cause for the issuance of the search warrant, the undersigned finds that the good faith exception applies to the search. Under well-established law, evidence obtained

pursuant to a warrant should be ordered suppressed only in the unusual case when exclusion of evidence will deter police misconduct. *United States v. Tuter*, 240 F.3d 1292, 1298-99 (10th Cir. 2001) (quoting *United States v. Leon*, 468 U.S. 897, 916, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). Therefore, even if a warrant is invalidated for a lack of probable cause, the good faith exception applies and evidence seized pursuant to the warrant need not be suppressed where an officer acting with objective good faith obtains a warrant from a detached and neutral magistrate and the executing officers act within its scope. *Tuter*, 240 F.3d at 1299.

The evidence adduced at the hearing demonstrated that Investigator Singer acted in good faith in obtaining the warrant. The affidavit was not so lacking in indicia of probable cause to render the officer's belief in the validity of the warrant unreasonable. The undersigned finds, therefore, that the good faith exception is applicable to the facts of this case.[3]

### Detention of Stout

When Defendant came out of his residence he was immediately handcuffed by officers at gunpoint. Defendant asserts that this action constitutes an illegal arrest because he had not committed a crime in the officers' presence and at that point the officers had no reason to believe he had committed a crime. Defendant argues that all statement made by him should be suppressed as the tainted product of an illegal arrest.

---

[3] The undersigned rejects Defendant's assertion that under the reasoning of *Arizona v. Gant*, 556 U.S.__, 129 S.Ct. 1710, 1722 (2009), the Court is free to ignore the good faith exception to the exclusionary rule.

The Supreme Court has ruled that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted. *Michigan v. Summers*, 452 U.S. 692, 705 (1981). The Court found that such a detention is proper to minimize the risk of harm to the police and the occupants. *Id*. at 702-03.

The undersigned rejects Defendant's contention that he was arrested for a crime at the point when he was handcuffed. Defendant was detained while the officers conducted a search of his residence pursuant to the search warrant. The fact that the officers employed their weapons for their protection and the protection of the Defendant was reasonable under the circumstances. The undersigned finds that the detention of Defendant while his residence was being searched was proper and further that Defendant was read Miranda warnings before any arguably incriminating statements were made. There is, therefore, no basis for suppressing any of the statements Defendant made to police.

## **CONCLUSION**

The undersigned United States Magistrate Judge RECOMMENDS that Defendant's Motion to Quash Statements and Evidence Due to Illegal Arrest [Dkt. 28] be DENIED.

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma on or before **June 25, 2010**.

If specific written objections are timely filed, Fed.R.Civ.P. 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

See also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 11th day of June, 2010.

*/s/ Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE